[No. 34261.   Department Two.   October 24, 1957.]

CLARA MAXINE HOSFIELD LAWRENCE, *Respondent*, v. BYRON A. HOSFIELD, *Appellant*.[1]

*Theodore D. Peterson*, for appellant.

*Day & Westland*, for respondent.

HILL, C. J.—This is an appeal from an order modifying a divorce decree changing the custody of three minor children from the father to the mother.

December 2, 1954, Byron A. Hosfield secured an uncontested decree of divorce from Clara Maxine Hosfield on a cross-complaint and was awarded the custody of their

[1] Reported in 316 P. (2d) 1102.

three minor children. The actual care of the children has been assumed by Mr. Hosfield's parents.

June 6, 1955, Mrs. Hosfield married Charles H. Lawrence, a torpedoman second class in the United States Navy. Since their marriage, they have resided in California, where Mr. Lawrence is stationed. June 7, 1956, she filed a petition seeking modification of the custody provisions of the divorce decree.

At the close of the petitioner's evidence, her counsel advised the court that

". . . the Welfare here in Pasco called me and asked me if they could make one [a home study] in conjunction with this case, of the Hosfield home in Kennewick, and also have the California Home Welfare Department made [sic] a study of the Lawrence home in California. I told them that would be fine with me. They told me they are making such a study, and are going to send reports to the Court, and I would like the Court to consider those in conjunction with the testimony."

After Mr. Hosfield had presented his last witness, the following occurred:

"COURT: If I'm not going to make a decision today, I'm going to make a few observations. I am willing to hear from counsel.

"MR. PETERSON [counsel for defendant]: We have no objection to the court talking to the youngsters. *Not that we object to it particularly, but my experience with a welfare check on a home has been extremely unsatisfactory,* and I don't think it is a guide. I don't think it is helpful at all. As a matter of fact, I think it is misleading. Nobody would know the youngsters any better than people who live next to them every day." (Italics ours.)

The court informed counsel what he hoped to learn from the reports, indicating that he was concerned with home conditions, and stated that a decision would not be rendered until such reports were received. Approximately three months later, the court received the reports and sent copies thereof to counsel together with a copy of his memorandum decision.

At the hearing set for argument on the memorandum decision, Mr. Hosfield's counsel urged that the court should

not consider the welfare reports for the reason that he did not have an opportunity to cross-examine the persons who made the reports.

Thereafter, the court made its findings of fact and conclusions of law. An order was entered modifying the divorce decree and giving the plaintiff the custody of the children at "the end of the spring term of grade school in 1957."

Appellant urges on this appeal that the trial court erred in considering the reports to which we have referred in conjunction with the testimony, and basing its modification order in whole or in part thereon.

█ Although these reports were not introduced in evidence, they were filed in the superior court with the memorandum opinion of the judge and were included in the transcript forwarded to this court. While we appreciate the value and necessity of such reports under certain conditions and circumstances, they have no place in adversary proceedings, except by agreement of the parties.

As we said in *Lorang v. Lorang* (1953), 42 Wn. (2d) 539, 540, 256 P. (2d) 481, "We do not condone the receipt of an 'out-of-court' report in any adversary proceeding." However, in the case at bar, after the court had heard the opinion of defendant's counsel as to the reliability and value of such reports, it informed counsel not only that the reports would be received, but also what it hoped to learn therefrom. When informed of the procedure to be followed in regard to the reports, counsel should have known that parts thereof would be predicated on hearsay and that he would not be afforded an opportunity to cross-examine the persons who made them. Nevertheless, he failed to object and gambled on the result. When the reports were determined to be adverse, he, for the first time, objected to their use. This objection was not timely and, by acquiesence in the receipt and consideration of the reports, there was a waiver of any right to claim error.

█ We are further satisfied that if the reports are disregarded (and, not being included in the statement of facts, we have disregarded them), the first four findings

of fact, to which no error has been assigned and which consequently become established facts in the case (Rule on Appeal 43, 34A Wn. (2d) Supp. 17), together with a challenged finding supported by evidence, warrant a change in custody.

The unchallenged findings established that Mr. Hosfield was "spending a good deal of his time in various beer taverns"; that, from the time the divorce decree was entered until a few weeks prior to the hearing in the petition for modification, he "was being supported by the Washington State Department of Public Assistance"; that he "did not commence work until after the service of the Petition for Modification" upon him; and that his parents (aged sixty-eight and seventy at the time of the trial), who have had the care of the children, are "well advanced in age, and will be physically incapable of caring for the children for many more years."

The unchallenged findings established further that the former Mrs. Hosfield's present husband "appeared to the Court to be a very stable young man and of very strong character," who "expressed a willingness and a desire to accept the children," and to bear the full responsibility for their support.

The trial court made a finding (likewise unchallenged) that, at the time the divorce decree was entered, December 2, 1954,

". . . the plaintiff was associating with various men and was spending a great deal of time in beer taverns, and that this course of conduct continued for several months subsequent to the entry of the Decree."

This was followed, however, by a finding, to which error was assigned, that the former Mrs. Hosfield had reformed and had ceased misconducting herself and that she was now a proper person to have the care, custody, and control of the minor children. (This finding, in so far as it related to her conduct, must have been predicated on Mr. Lawrence's testimony that she had been a good and faithful wife, as that is the only direct testimony on that point and there is no testimony to the contrary. All of the testimony

produced by Mr. Hosfield related to the conduct of the former Mrs. Hosfield during their marriage, and immediately following it, but prior to her marriage to Mr. Lawrence.)

Another challenged finding, but one which was supported by substantial evidence, stated that Mr. Hosfield was unable or unwilling to properly support the children, and that he was not a proper person to have their care, custody, and control.

In this case, the contending parties seemed to be more interested in damning each other in the eyes of the court than in proving their own fitness to have the custody of the children. The appearance and attitude of the parties may have been more persuasive than what was actually said by the witnesses in support of the finding relating to the reformation of the former Mrs. Hosfield and her fitness to have the custody of the children. We cannot say that the evidence preponderates against that finding, hence it will not be disturbed. *Lewis Pacific Dairymen's Ass'n v. Turner* (1957), 50 Wn. (2d) 762, 314 P. (2d) 625.

The findings indicated a substantial change in the fitness of the parties, and the trial court concluded that a change in custody was for the best interests of the children and for their welfare (the paramount concern of the trial court and of this court, *Munroe v. Munroe* (1956), 49 Wn. (2d) 453, 302 P. (2d) 961). There having been no manifest abuse of discretion, we will not disturb the custody provision made by the trial court for the children. *Sweeny v. Sweeny* (1953), 43 Wn. (2d) 542, 262 (2d) 207.

The order modifying the custody provision of the divorce decree is affirmed. Respondent will recover costs, but not the additional requested attorney's fee.

DONWORTH, WEAVER, ROSELLINI, and FOSTER, JJ., concur.